WILLIAM POTTER 2d. *vs.* JOHN S. TYLER & another.

The maker and indorser of a note made payable to his own order is entitled to the same
defence against a holder who receives it after it is overdue, that he would be allowed
to make if the note had been payable to a third person or his order.

The maker of a note, which was discounted by a bank, transferred to the bank, as mere
collateral security, shares in an insurance company, by a conveyance absolute in form,
and those shares were attached by a creditor of the bank, before the note fell due,
and sold on execution after it fell due.    *Held,* that a plaintiff, who received said note
from the bank after it was overdue, could recover nothing in an action thereon
against the maker, if said shares were, at the time they were so attached, of suffi-
cient value to pay the note, though they were of less value than the amount of the
note, when they were sold on execution.    *Held* also, that in such action against the
maker, he might give in evidence a copy of the execution on which such shares were
sold by the creditor of the bank, without producing a copy of the judgment on which
such execution issued.    *Held* further, that a copy of the writ on which said shares
were attached, and the return of the attachment, attested by the attaching officer, and
left with the secretary of the insurance company, was not admissible in evidence to
prove the attachment or the time when it was made.

Though a copy of a paper, not certified by the proper officer, is admitted in evidence,
yet a new trial will not be granted for that cause, if the party afterwards produce a
duly certified copy which is found to correspond with that which was admitted.

ASSUMPSIT on a promissory note, dated February 1st, 1837,
for $5000, payable to the defendants' own order in eight months,
and indorsed by them in blank.  Before maturity, viz. September
12th, 1837, $4000 were indorsed in part payment of the note.
The note came into the hands of the plaintiff after it was over-
due.

From the report of *Putnam,* J. before whom the case was
tried, it appeared that the plaintiff objected, that the defendants
had barred themselves from making any defence on the ground

that the note came into the plaintiff's hands as a dishonored paper, or overdue ; because it was a note payable to the defendants' order and indorsed by them, and so tantamount to a note payable to bearer. But this objection was overruled.

The defendants then proved that the Franklin Bank held this note. It was found by the cashier of that bank, on the 18th July, 1837, among the notes discounted, in an envelope containing these memoranda : " Stock $ 5000. Feb. 1st, 8 ms. — $ 4000 indorsed Sep. 12 — 5 shs. Hancock Bank. 15 shs. Protection Ins. Co. 12 do. La Fayette Bank. See vote Sep. 12, 1837 — Directors' Records. See vote Feb. 10th, 1838." The cashier explained the writing on the back of the envelope to mean, that the note had been discounted by the bank for $ 5000 ; that $ 4000 were indorsed 12th September ; that five shares of the Hancock Bank, 15 shares of the Protection Insurance Company and twelve shares of the La Fayette Bank were given by the defendants as collateral security for the payment of the note.

By the vote of February 10th, referred to in said envelope, the directors ordered the cashier to pass out the note to Elijah D. Harris. In a week or ten days after that vote was passed, a man who was not personally known to the cashier came to the bank for the note, which the cashier gave up to him, supposing that he (the cashier) was delivering it to the order of said E. D. Harris. The man paid to the cashier $ 1000, in liabilities of the bank, and interest ; and the cashier gave him the note, and kept the collateral security in the bank. But the fifteen shares in the Protection Insurance Company were attached as the property of the bank, by Lemuel Brackett, a creditor of the bank, before the note was passed out of the bank to the supposed verbal direction or order of Harris.

It appeared that the defendants had a general account with the bank, but that the stock before mentioned, as the cashier testified, was pledged or transferred specially towards the payment of this note.

In February, 1838, the La Fayette Bank shares were worth nothing : The five shares in the Hancock Bank were before that

time applied towards the payment of the $4000 which were indorsed ; and the fifteen shares in the Protection Insurance Company, at the time when they were attached, were worth from $30 to $90 a share, being more than sufficient to pay the amount then due on said note. But those shares afterwards fell greatly in value, and in May, 1838, were actually sold for $622·50. The transfer of these fifteen shares to the bank by the defendants was absolute in form ; but it was testified by a witness, and there was other evidence tending to prove, that they were in fact put into the hands of the officers of the bank as collateral security for the payment of the note now in suit ; and the witness stated that the note and the collateral security were to have been given up to the defendants, or their order, on settlement of the same ; and that the note was not to be separated from the collateral security and given to any third person, unless with the consent of the defendants.

There was evidence tending to show that the note was obtained by one Homer from the cashier, without the knowledge or consent of the defendants ; without the authority of E. D. Harris, and without the collateral security ; that Homer sold the note to one Howland ; and that this suit was brought by the authority or for the use of Howland. But the cashier testified expressly that he should not have delivered the note to the man who called and inquired for it, unless he had so conducted himself as to induce him (the cashier) to suppose that the man was authorized by Harris to receive the note.

The defendants rested their defence on two grounds : 1st. That the plaintiff did not come honestly by the note, and could not maintain an action as the indorsee thereof. 2d. If he could maintain the action, yet as the note was dishonored when the bank passed it over, the defendants were entitled to make the same defence against the plaintiff which they could make if the suit were in the name of the Franklin Bank. 3d. That the bank had received the collateral security, viz. the fifteen shares in the Protection Insurance Company, and had suffered the same to be attached on mesne process and afterwards to be sold on execution in favor of said Brackett against the bank, which shares

Potter *v.* Tyler & another.

were appropriated to the use of the bank, and were, when they were attached, worth more than enough to pay all the money due upon the note now in suit.

The defendants offered in evidence a copy of the execution of Lemuel Brackett against Franklin Bank, dated May 9th, 1838, and certified by C. A. Parker, Clerk, and by A. Ward, Esquire, chief justice, of the court of common pleas in Suffolk. This was admitted by the presiding judge, though the plaintiff objected thereto and insisted that a copy of the judgment, on which said execution issued, should be produced before said execution could be admitted. The judge also admitted in evidence (the plaintiff objecting thereto) a copy of the officer's return, on the original writ of said Brackett against said bank, that said fifteen shares in the Protection Insurance Company were attached on the 20th of September, 1837 — it being the paper which was left at said company's office, and produced in court by S. Wheeler, secretary of the company.

The value of the shares, when they were sold and also when they were attached, was proved by the testimony of said Wheeler.

E. D. Harris was examined for the defendants on interrogatories, and the plaintiff objected to two of the interrogatories, and answers, viz. "Whether or not did you intend to receive said note and collateral securities from said bank before you had acquainted the promisors with the arrangement, and obtained their consent? *Answer.* I did not. That was a part of the condition. I did not know but that the promisors might raise objections to the payment of the note.

"Whether or not would you have taken said note from said bank without the collateral security given therewith to secure the payment thereof, and without first obtaining the assent of the promisors to the arrangement? *Answer.* I should have not."

This objection was overruled.

The jury were instructed, that inasmuch as the defendants admitted their *signatures* as *promisors* and *indorsers,* the plaintiff, by the production of the note, made out a *primâ facie* case, which was sufficient, unless rebutted by the defendants. That

if the plaintiff obtained possession of the note from the bank, through Howland and Homer, by fraud or mistake, then he was not to be considered by law as a lawful holder and was not entitled to maintain this action. But if the jury should find that the plaintiff was a legal holder, yet if they should be satisfied, upon the evidence, that the fifteen shares in the Protection Insurance Company were transferred by the defendants as collateral security for this note, and that the bank had suffered the same to be attached on mesne process and levied on execution by Brackett against the bank, that the bank were not by law entitled to recover the note, if at the time of the attachment these shares were worth enough to pay the note ; as the plaintiff had no better right to recover, than the bank would have if the suit were brought in the name of the bank ; it having been proved that the note was passed out of the bank after it became due and was dishonored.

The verdict was for the defendants, and the plaintiff moved for a new trial because of the instructions aforesaid and of the admission of evidence as aforesaid, which, he submits, should have been rejected.

*Coffin*, for the plaintiff.

*Page*, for the defendants.

PUTNAM, J.   The case finds that the note, on which the action is brought, was received by the plaintiff from the bank, after it was overdue and dishonored.   But the plaintiff notwithstanding contended that inasmuch as the makers and the payees are the same persons, the defendants were not entitled to make the same defence to this action as they could legally have made against the bank.   This objection is of no validity.   It has been the usage of the commercial world, for more than a century, to make negotiable paper in this form.   The case of *Starke* v. *Cheesman*, Carth. 509, was upon a bill of exchange drawn by the defendant upon himself, in 1692 ; and the declaration set forth that it was according to the custom of merchants.   See also Chit. on Bills, (2d ed.) 26.   Bayley on Bills, (1st Amer. ed.) 5.

The verdict has affirmed, either that the plaintiff obtained the

note from the bank by fraud or mistake, and so, that he is not the lawful holder ; or that the defendants transferred 15 shares in the Protection Insurance Company to the bank, as collateral security for the note, and that the bank suffered the same to be attached on mesne process and levied on execution by a creditor against the bank — which shares were, at the time of the attach ment, worth enough to pay the amount then due on the note. And in either of those events, if the bank were plaintiffs, they could not recover against the defendants. The charge to the jury, in this respect, was correct. And inasmuch as the plaintiff took the note after it was overdue and dishonored, his right to recover is to be considered just as the bank's right would be, if the bank were plaintiff. The charge, in that respect, was right.

But it is contended for the plaintiff, that evidence was admitted, which should have been rejected : To wit, that a copy of the execution in favor of Lemuel Brackett against the bank was admitted as evidence, which copy was certified by C. A. Parker, clerk, and also by Artemas Ward, Esq., chief justice of the court of common pleas, without the production of the judgment upon which the execution issued.

If this were a suit between the bank and the purchaser of the shares in the insurance company, it might be competent for the bank to insist upon strict proof by the purchaser who claimed title to the shares. But so far as concerns the defendants, it is of no consequence how the bank sold the shares, or suffered them to be taken and sold. Whether the sale were legal or not, there has been a sale *de facto*. The bank has had the benefit of the property, and the defendants have been deprived of it. It would be no answer to the defendants' claim for the bank to say, " it is true we have suffered your property, placed in our keeping as collateral security, to be taken and sold, but the proceedings were irregular, and we might have avoided the sale, if we had pleased." The defendants might well reply, " you did not please to avoid the sale ; you have thus taken our property to pay your execution creditor." The execution and return were competent evidence between these parties, without a copy

of the judgment, which might be necessary as a part of the title, if the purchaser of the shares were contesting with the bank. Bul. N, P. 234. 1 Stark. Ev. 282.

It was contended for the plaintiff, that the court erred in ruling that the value of the stock, when it was attached, should be the measure of the defendants' allowance for the same in this action. But we do not think so. The shares stood in the name of the bank. The attachment and subsequent proceedings of Brackett against the bank — submitted to, as they were — should be considered as an appropriation of the defendants' property without their assent, and without any notice to them. The bank, in thus misappropriating the collateral security, must be considered as a wrongdoer from the time when it suffered the shares to be so incumbered and attached.

It was also contended at the trial, that certain interrogatories to a witness were leading, and that the answers should be of course rejected. But it was too late to make that objection, at the trial. If it had been made at the proper time, the defendants might have varied their questions. *Potter* v. *Leeds,* 1 Pick. 313. *Allen* v. *Babcock,* 15 Pick. 56.

The value of the shares in the insurance company, at the time when they were attached, was proved by Wheeler, secretary of the company. But the time when the attachment was made was proved by the copy of the original writ of Brackett against the bank, which was left at the office of the insurance company by the attaching officer, and produced by said Wheeler. And it was objected at the trial, that such copy was not competent evidence. And it is true that the best evidence would have been a copy of the original writ and return, certified by the clerk of the court to which it was returned.

This is an objection of mere form. The defendants now produce a copy of the writ and return, certified by the clerk, which agrees with that which was produced by Wheeler at the trial. If a new trial should be ordered, we should not open the whole cause, but, exercising a sound judicial discretion, should imit the inquiry to the time when the attachment was made. For if there was no mistake in regard to that, there should be

a judgment for the defendants. But we see that the time of the attachment would, upon a new trial, be fixed, by the evidence which is properly authenticated, to be the same which was proved at the trial by the officer's copy produced by Wheeler. We therefore think that the cause ought not to be sent to a new trial on account of this objection.

Upon consideration of the whole matter, we all think that judgment should be rendered for the defendants, according tr the verdict.